AMERITRADE, INC., Appellant, *v.* FIRST INTER-STATE BANK OF NEVADA, Respondent.

No. 19775

November 27, 1989                              782 P.2d 1318

---

*Albright, Stoddard, Warnick & Albright,* Las Vegas, for Appellant.

*Jolley, Urga, Wirth & Woodbury,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from an order granting respondent's motion for partial summary judgment. For the reasons set forth below, we reverse.

### Facts

Taken in the light most favorable to appellant, the record indicates the following facts: In February 1985, appellant Ameritrade, Inc. contracted with Stoneridge Securities, Inc. to handle all cashiering functions related to securities transactions for Stoneridge's customer accounts. To perform these services, Ameritrade opened an account with respondent First Interstate Bank of Nevada. Stoneridge would deposit monies into this account and then direct Ameritrade, through the use of trade orders, to purchase various securities for its customers.

On November 27, 1987, a check payable to Ishwar Patel, Hansa Patel, and Kangi Patel (Patel check) was drawn on an account at a Massachusetts bank in the amount of $236,465.41. Ameritrade alleges that the Patel check was endorsed and deposited into Ameritrade's account at First Interstate by a Stoneridge employee, Randy Gleich. Ameritrade then purchased various securities for the Patels pursuant to Stoneridge's directions.

On or about December 21, 1987, First Interstate advised Ameritrade that a hold was being placed on its account because the Patels had claimed their endorsements were forged and unauthorized. On January 6, 1988, the Patels assigned all their rights to First Interstate in the securities purchased by Ameritrade on their behalf. First Interstate subsequently paid the Patels $230,445.41 and received a release of all claims the Patels might have against First Interstate.

Also on January 6, 1988, First Interstate Vice President James Howard advised Ameritrade that the hold on its account had been released. Ameritrade subsequently transferred the contents of the Patels' account to an account in the name of First Interstate. Ameritrade then liquidated some of the securities in this account and by January 26, 1988, had reimbursed First Interstate a total of $75,000.00.

On April 1, 1988, First Interstate filed suit against Stoneridge, Stoneridge President Ronald Wheeler, Sr., and Ameritrade to recover the losses sustained due to negotiation of the Patel check. By way of an affirmative defense, Ameritrade asserted that Randy Gleich was authorized to endorse the Patel check.

A joint case conference report was filed August 24, 1988, by the attorneys for First Interstate, the Patels, and Ameritrade. At this time both Stoneridge and Wheeler were in bankruptcy. In the August 24 report, Ameritrade again asserted that Gleich was authorized to endorse the Patel check. The report also contains a discovery plan and witness list, which includes Gleich's name and the notation: "Gleich will testify as to agreements and transactions with the Patels, including endorsement of the check in question."

First Interstate filed a motion for partial summary judgment against Ameritrade on October 3, 1988, asserting Ameritrade's liability based on breach of the presentment and transfer warranties contained in NRS 104.4207(1) and (2).[1] An affidavit of

---

[1] NRS 104.4207 adopts the provisions of the Uniform Commercial Code, § 4-207, and provides in pertinent part:

>    1. Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:
>    (a) He has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and
>    . . . .
>    2. Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that:
>    (a) He has a good title to the item or is authorized to obtain payment

forgery and non-authorization, signed by each of the Patels, accompanied First Interstate's motion. In its opposition, Ameritrade requested additional discovery time pursuant to NRCP 56(f) in order to depose the witnesses listed in the joint case conference report. Despite this request, the district court granted First Interstate's motion by order dated November 15, 1988.

Ameritrade contends that the district court erred by granting First Interstate partial summary judgment. Specifically, Ameritrade contends that a continuance should have been granted which would have enabled Ameritrade to depose the witnesses listed in the joint case conference report. Ameritrade argues that without such testimony, the district court could not fairly evaluate the factual issues raised by Ameritrade's various defenses. This contention has merit.

### Discussion

Preliminarily, we note that less than eight months had passed since the filing of First Interstate's complaint until the time summary judgment was granted. We also note that Ameritrade was unable to commence taking depositions until after the joint case conference report was filed. See NRCP 26(a).

NRCP 56(f)[2] provides that the district court may order a continuance when the party opposing summary judgment is unable to present facts which support his position. It is apparent from the affidavit of Ameritrade President Thomas Pleiss that an issue exists as to whether the Patel check was wrongfully endorsed or whether the Patels were attempting to back out of the trades placed on their behalf in December 1987. It is also apparent that Ameritrade is unable to present by affidavit facts which support its endorsement authorization defense, since Ameritrade was not a party to any such arrangement which may have existed between the Patels and Stoneridge.

In Halimi v. Blacketor, 105 Nev. 105, 770 P.2d 531 (1989), we held that summary judgment was improperly granted where appellant had sought additional time to conduct discovery in order to gather facts supporting his position. We noted in *Halimi*

---

or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and

(b) All signatures are genuine or authorized; . . .

[2]NRCP 56(f) provides:

When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

that less than one year had transpired between the time appellant filed his complaint and the time summary judgment was entered against him. We also noted that Halimi's request for additional time was reflective of his diligence in pursuing the action. Thus, the district court had abused its discretion by refusing Halimi's request for a continuance and by granting summary judgment at such an early stage in the proceedings. *Halimi,* 105 Nev. at 105, 770 P.2d at 532. See also Harrison v. Falcon Products, 103 Nev. 558, 746 P.2d 642 (1987).

In the instant case, Ameritrade has not been dilatory in pursuing discovery and has demonstrated its diligence by requesting additional time to obtain depositions. Based on these facts, it was an abuse of discretion to deny Ameritrade's request at such an early stage in the proceedings. Because we hold that Ameritrade was entitled to additional discovery time, we need not reach Ameritrade's other contentions.

Accordingly, we reverse the order granting partial summary judgment and remand the case to the district court for further proceedings.